UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHEAL J. BESOYAN,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO COUNTY, et al.,<br><br>Defendants. | No. 2:16-cv-46-KJM-EFB PS<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff was granted leave to proceed *in forma pauperis*, but his complaint was dismissed with leave to amend for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2).[1] ECF No. 3. Plaintiff was subsequently granted four extensions of time to file his amended complaint. ECF Nos. 7, 9, 11, 14. Nonetheless, he has failed to timely file his amended complaint and instead submitted a belated fifth request for an extension of time. ECF No. 15. While that request was pending, he finally filed his first amended complaint. ECF No. 16. In light of plaintiff's pro se status, the fifth request for an extension of time is granted and the court proceeds herein with the required screening of the amended complaint. 28 U.S.C. § 1915(e)(2). As explained below, the first amended complaint must also be dismissed for failure to state a claim and for lack of subject matter jurisdiction.

---

[1] This case, in which plaintiff is proceeding *in propria persona*, was referred to the undersigned under Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

1

As previously explained to plaintiff, although pro se pleadings are liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint, or portion thereof, should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id*. (citations omitted). Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). A pro se plaintiff must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

Plaintiff's first amended complaint asserts claims under 42 U.S.C. §§ 1981, 1983, 1985, and 18 U.S.C. § 241 and 242 against more than 50 defendants, including the County of Sacramento and several of its employees; the Sacramento County Board of Supervisors and its members; the Sacramento County Assessor's Office and some of its employees; the Sacramento County Sherriff's Department and several of its deputies; the City of Citrus Heights, its current

/////
/////
/////

2

| | |
|---|---|
| 1 | mayor, and one of its City Council members; and the Citrus Heights Police Department and |
| 2 | several of its officers.[2]  ECF No. 16 at 2-4. |
| 3 | As a threshold matter, the first amended complaint fails to comply with Rule 8, Fed. R. |
| 4 | Civ. P.  Rather than providing a short and plain statement for each of plaintiff's claims, the prolix |
| 5 | 65-page complaint contains needless detailed description of events (and sometimes insufficient |
| 6 | descriptions of events) occurring between 2004 and 2015, many appearing, at most, only |
| 7 | tangentially related to plaintiff's primary dispute with the defendants.  The complaint is muddled |
| 8 | with repeated citations to the approximately 140-pages of exhibits appended to the complaint, |
| 9 | many of which consist of additional factual allegations and legal arguments rather than evidence |
| 10 | in support of any particular factual assertion.  *See generally id*. at 67-206.  As drafted, it is nearly |
| 11 | impossible to discern the specific claims plaintiff intends to allege against each of the 50 named |
| 12 | defendants.  Nor can it be determined what specific facts are intended to support each claim. |
| 13 | Plaintiff's failure to comply with Rule 8 alone justifies dismissal of his complaint.  *See Schmidt v.* |
| 14 | *Hermann*, 614 F.2d 1221, 1223 (9th Cir. 1980) (upholding the dismissal of a complaint where it |
| 15 | was "impossible to designate the cause of action or causes of action attempted to be alleged in the |
| 16 | complaint."); *In re Sagent Tech., Inc.*, 278 F.Supp.2d 1079, 1094 (N.D. Cal. 2003) ("[T]he |
| 17 | complaint fails to state a claim because plaintiffs do not indicate which individual defendant or |
| 18 | defendants were responsible for which alleged wrongful act."); *see also McHenry v. Renne*, 84 |
| 19 | F.3d 1172, 1177-78 (9th Cir. 1996) (affirming Rule 8 dismissal of complaint that was |
| 20 | "argumentative, prolix, replete with redundancy, and largely irrelevant" and providing an |
| 21 | example of a properly pleaded claim, which could be "read in seconds and answered in minutes"). |
| 22 | After multiple reviews of the complaint and its exhibits, it appears that whatever claims |
| 23 | plaintiff intends to present, they are predicated on his contention that all of the defendants |
| 24 | participated in a grand conspiracy to assess fraudulent property taxes, which ultimately led to the |

---

[2] Plaintiff also claims defendants violated "H.R. 1944 Private Property rights protection act of 2013."  ECF No. 16 at 1, 62.  The house bill plaintiff refers to was passed by the United States House of Representatives, but not the United States Senate.  *See* H.R. 1944-113 Congress (2013-204), https://www.congress.gov/bill/113th-congress/house-bill/1944.  Accordingly, that proposed legislation was never enacted into law.

sale of plaintiff's home to satisfy those taxes. *See, e.g. id*. at 21 (alleging that defendants "forced foreclosure of [plaintiff's] property BASED ON FABRICATED ERRANT VALUES assigned by defendants 1-6, collected by defendants 1-17, and allowed and endorsed by the leaders of [the County of Sacramento] and [City of Citrus Heights] defendants 18-15 in concert with all remaining defendants 1-51 and other unknown entities.").[3] Generously construed, the complaint alleges that plaintiff purchase real property located at 7744 Nelson Lane, Citrus Heights, California (the "property") in 1976, (ECF No. 16 at 5, 14), and in 2004, the home built on it was destroyed by arson. *Id*. at 8, 9. In late 2004, plaintiff executed a sales contract with his "life partner," Patricia Laber, to convey an interest in the property to Ms. Laber. *Id*. at 14. The "purpose of the assignment [was] to allow [Ms. Laber] to take advantage of a tax deduction that would be generated by the loan to rebuild the home . . . ." *Id*. at 15. That sales contract allegedly provided that if a loan to rebuild the home could not be obtained within one year of the agreement, the property would automatically revert back to plaintiff. *Id*. at 15-16. Several months after executing the contract, plaintiff recorded a quitclaim deed. *Id*. at 14-15. Although he only intended to convey to Ms. Laber a 50 percent interest in the property, "by an error on [plaintiff's] part the county recorded a 100% share to" Ms. Laber. *Id*. 16.

Thereafter, the County of Sacramento reassessed the property's value, which resulted in a significant increase in property taxes. *Id*. at 16. Plaintiff and Ms. Laber were apparently unable to pay the newly assessed taxes and defaulted on the property taxes. *Id*. at 17, 166. Plaintiff claims, however, that the County improperly increased the property taxes. He claims that since he and Ms. Laber were unable to obtain a loan to rebuild the damage caused by the 2004 fire within one year of the sales contract, the "title reverted back to the Prop XIII values under California Constitutional Law" pursuant to the terms of their contract. *Id*. at 16-18. Plaintiff also contends that in assessing the value of the property, the Sacramento County Assessor's Office
/////

---

[3] The first few pages of plaintiff's complaint consists of a numerical list of all the defendants. ECF No. 1 at 2-3. Throughout his complaint, plaintiff refers to each defendant by the number assigned by the list.

4

fraudulently claimed that plaintiff had rebuilt his home after the 2004 fire to justify an increase in property taxes. *Id*. at 8.

In February 2008, the City of Citrus Heights notified the County of Sacramento that it was going to file a nuisance abatement lien on the property. *Id*. at 20. The City recorded the lien in May 2008, but plaintiff claims that he did not receive notice of the lien until July 10, 2008. *Id*. at 21-22. Plaintiff claims that the delay in the provided notice was "another trick" to deprive him of his right to due process and equal protection, and "confirms a connection between" the City of Citrus Heights and the County of Sacramento.[4] *Id*. at 21.

The County of Sacramento subsequently initiated the process to sell the property at public auction, with a sale date initially set for February 23, 2009. *Id*. at 42. Plaintiff was successful at stopping that sale, as well as seven other subsequently scheduled sales that were noticed during the following four years. *Id*. The property was eventually sold at public auction in February 2014. *Id*. at 9, 126. Plaintiff appears to contend that the sale was unlawful because he was not given adequate prior notice of sale and because the property was allegedly sold in violation of an automatic stay. *See* 11 U.S.C. § 362.[5]

Although plaintiff purports to bring this action under 42 U.S.C. §§ 1981, 1983, and 1985, it is clear from his allegations that he contests the assessment of his property taxes and this amended complaint reduces to an effort challenge the collection of those taxes. Plaintiff, however, is barred from asserting such challenges in federal court.

"The Tax Injunction Act, 28 U.S.C. § 1341, provides that federal district courts may not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Patel v. City of San Bernardino*, 310 F.3d 1138, 1140 (9th Cir. 2002). "The Supreme Court repeatedly has characterized the Act as a broad jurisdictional barrier, which limits drastically federal court

---

[4] California Revenue and Taxation Code § 3691(b)(1)(A) authorizes the tax collector to sell property where the property has become tax defaulted for three years or more and a party that has recorded a nuisance abatement lien on the property requests the sale.

[5] Plaintiff claims that the stay was in effect after a bankruptcy petition was filed "in Patricia Labers [sic] name" hours before the sale occurred. *Id*. at 55-56.

5

jurisdiction to interfere with so important a local concern as the collection of taxes." *Lowe v. Washoe County*, 627 F.3d 1151, 1155 (9th Cir. 2010) (citations and quotations omitted). In addition to barring actions seeking declaratory and injunctive relief, the Act precludes a plaintiff from bringing an action for damages under 42 U.S.C. § 1983 that challenges a state or municipal taxation scheme "so long as a 'plaint, speedy and efficient' remedy is available in state court." *Patel*, 310 F.3d at 1140; *see also See Jerron West, Inc. v. Cal. State Bd. of Equalization*, 129 F.3d 1334, 1337 (9th Cir. 1997) (noting that the Tax Injunction Act prohibits "even an indirect restraint on tax assessment); *see also Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981) (holding that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts" and must "seek protection of their federal rights by state remedies.").

Here, the crux of plaintiff's complaint is that defendants conspired to improperly assess his property taxes, which eventually led to the sale of the property to satisfy the disputed taxes. Thus, it is clear that plaintiff's claim for damages under sections 1981, 1983, and 1985 are barred by that Tax Injunction Act so long as plaintiff has an adequate remedy in state court.

California law permits a taxpayer to seek a refund of the disputed tax amount after the tax has been paid. Cal. Const. art. XIII, § 32 ("No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."); Cal. Rev. & Tax. Code § 4807 (court may not prevent or enjoin the collection of property taxes by any county, municipality, or district). The Supreme Court and Ninth Circuit have held that California's "pay first, litigate later" rule provides its taxpayers with an adequate remedy for purposes of the Tax Injunction Act. *See, e.g., Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 338 (1990) ("To the extent they are available, California's refund procedures constitute a plain, speedy, and efficient remedy."); *Capitol Indus.-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 (9th Cir. 1982) ("[T]he doctrine of exhaustion under California law does not preclude the constitutional review [plaintiff] seeks. Therefore, [it] has a 'plain, speedy and efficient remedy'

within the meaning of Section 1341."); *see also Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 505, 528 (1981) (A state "remedy which requires property owners contesting their property taxes to pay under protest and if successful obtain a refund . . . is 'a plain, speedy and efficient remedy'[.]"); *Air Polynesia, Inc. v. Freitas*, 742 F.2d 546, 548 (9th Cir. 1984) (observing that a "demonstrated inability to pay a tax does not remove the jurisdictional bar of the Tax Injunction Act.").

Accordingly, the court lacks jurisdiction over plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985 challenging the assessment and collection of his property taxes, and those claims must be dismissed without leave to amend. *See Simmons v. Weersing*, 139 F.3d 908 (9th Cir. 1998) (unpublished) (affirming district court's dismissal of plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1983 pursuant to the Tax Injunction Act); *Olajide v. Brown*, 2018 WL 3328227, at *2 (N.D. Cal. July 6, 2018) (finding that plaintiff's claims under 42 U.S.C. 1981 and 1983 challenges to his obligation to pay income taxes were barred by the Tax Injunction Act); *see also Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (while the court ordinarily would permit a pro se plaintiff leave to amend, leave to amend should not be granted where it appears amendment would be futile).

As for his claims under 18 U.S.C. § 241 and 242, those criminal statutes do not provide plaintiff with a private right of action. *See, e.g., Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir.2006) (affirming the dismissal claims under 18 U.S.C. §§ 241 and 242 because they "are criminal statutes that do not give rise to civil liability"); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.v1980) (holding that 18 U.S.C. §§ 241 and 242 are criminal provisions that do not provide a basis for civil liability). Accordingly, these claims must also be dismissed without leave to amend.[6]

---

[6] The complaint contains several allegations that could possibly be construed as unrelated to plaintiff's challenge to the assessment and collection of the property taxes. For example, plaintiff claims that unidentified individuals employed by the Sacramento County Assessor's Office unlawfully entered the property without his permission to take pictures. ECF No. 16 at 10. He also claims that defendant Gloria Martinez-Senftner, who purchased the property at the foreclosure sale, took his possessions, threatened his life, and filed fraudulent documents in relation to bankruptcy and state court unlawful detainer proceedings. *Id*. at 47, 58-59. To the

7

Accordingly, it is hereby ORDERED that plaintiff's fifth request for an extension of time (ECF No. 15) is granted.

Further, it is RECOMMENDED that plaintiff's first amended complaint be dismissed without further leave to amend and that the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 25, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

extent these allegations were not included in the complaint to support plaintiff's theory of a conspiracy, and instead were intended to support separate and unrelated claims, such claims were improperly joined in this action. *See* Fed. R. Civ. P. 20(a)(2).